Good morning, Your Honors. Good morning. I'm Christy Brandon, a Chapter 7 bankruptcy trustee from Montana, and I'm the appellant in this case. May I reserve two minutes for rebuttal? Whatever you've got left, you've got the clerk in front of you. Okay, that sounds great. There's a better interpretation of Section 321 of the Small Check Financing Act. 321 should be construed narrowly and strictly to apply only to common law deeds of trust. What happened before Judge Kershaw and with Judge Malloy is that there's several problems with the way they construed the statute. The primary one, though, is that – Common law deeds of trust? Yes, Your Honor. That comes as a surprise to somebody from California where everything is by statute. There are common law deeds of trust? Yes, Your Honor. That term is referred to by the Montana Supreme Court in the Amsterdam v. Dijkstra House case at Penn Site 179 Mont 133 at 139. Proceeds 321, right? It precedes the Amsterdam case. Why doesn't 321 wash out Amsterdam? It seems to say pretty much what the judges below said. That's right. Judge Kershaw and Judge Malloy both agree that there's a plain meaning and that there's no ambiguity, but there is. First of all, it's too broad. The way they construed it is too broad. It throws out the baby with the bathwater. What it does is that it doesn't give full effect to the Montana policy that trust indentures are not to be used on acreage less than 40 acres, or I think it's said in the inverse. It says if it's invalid, you know, and if it doesn't comply, it becomes a mortgage. Good. So that's what it says. And what you've pointed out is one way it might not comply. A better way, sir, a better way, Your Honor. It's because we need to have harmony with the statute for the full Montana Small Check Financing Act to work. We've got to have that public policy. The background that helps get you there is that in Montana there are three forms of real estate finance. There's the mortgage. That's where we all started out. And the purpose of the mortgage was to protect the right of redemption and the right of possession. So there was this balance once the small check finance was enacted in Montana in 1963. That shifted it equally so that there would only be 40 acres and less that could be used for trust indentures, and that was for business expansion, and that was for homes and home financing. But it left our agricultural purposes, ranching and farming, protected by our mortgage laws, specifically the right of redemption, right of possession. The problem with the interpretation from Judge Molloy and Judge Kershaw is that it upsets that balance. It puts it less on the right of redemption and the right of possession. Isn't that to take up with the legislature? I don't think it's a legislative problem. They've already done their best. I've tried to rewrite it to see if I could make some amends, but it's written the best that it can so that it can funnel to common law deeds of trust. I'll take you through that if you'd like. Section 321 itself, the title, look at the title. It says Deeds of Trust and Trust Deeds Not Invalidated. If the legislature indeed wanted that to be overruling Amsterdam, it would have talked about equitable mortgages or trust indentures in general, Trust Indentures Not Invalidated. But titles to sections of statutes are notoriously bad fits for the statute. It's sort of a short way for them to say something. At least in California, there's a rule that you don't rely on, if I remember correctly. You don't rely on the title, certainly not if it's inconsistent with the language. No problem. Moving on to the next clause, though, it says the Small Check Financing Act of Montana. I believe that distinguishes other sources that could invalidate an instrument. When you look at the way that the statute is read, it says, the legislature said, the Small Check Financing Act of Montana does not invalidate or preclude use in the state. So what I think that means is that there may be other grounds for invalidating, like illegality or mutual mistake, some way that you could reform a trust indenture or make it invalid. I suppose you could read it that way, but why not just read it the way it's written and just say, look, this is what they said. It reads to say it's not invalidated. And, you know, why would we want to do backwards flips? You've got two judges in front of you saying the same thing. On pages six and seven of my brief, it gives you a litany of the problems with that, with the interpretation of this. But the problems with statutes operating are taken up with the legislature. Our job is to figure out what the statute says. If it says something and it has implications that are – I don't see what the implications are so serious in this case. But you're saying, you know, maybe the serious – what's the serious implication here? Well, they're huge. Let me give you an example. If any consumer or any person – Why don't you give me this case as an example? Okay, MJ Simmons. No problem. MJ Simmons, a widowed rancher. Her acreage was 77 acres. Her husband died. She has medical debt on her credit card. She goes into her local banker that her husband told her to go to before deceasing. And what do they push in front of her? They put a trust indenture in front of her. At signing, she gave up her right of redemption and right of possession. She didn't know she'd done it. Okay, so? It tips the balance of our mortgage law protections and the purpose away from protecting rights of redemption which have been long held inviolate in all states, but particularly Montana. But it seems to be backward because it says things smaller than 40 acres. You know, this is something that's – she was treated as a commercial property. It was something that was bigger than 40 acres, right? This is not a home. This is not a – It should not have a trust indenture. It should have a mortgage on it that would give her the right of redemption and the right of possession. And what's the purpose of the mortgage? The mortgage is for ranchers and farmers so they can get that one year after foreclosure. I'm sorry. Doesn't 321 make it a mortgage? Sorry, what did – I didn't understand. I thought the statute, in fact, makes it a mortgage. It does, and I think that that's dealing with a deed of trust. It wants common law deeds of trust treated as mortgages in Montana. Let me clear up that ambiguity. But she retained her right of redemption because the 77-acre parcel was larger than 40 acres, and therefore she did not give up her right of redemption, true? To be treated as a mortgage. I understand where you're headed. No, no, no, that's what the law says. There's a different way of interpreting it, though. Section 321 is only dealing with deeds of trust. Let me take you back to that. On its face, on its face, the next clause that we haven't talked about yet, which says sometimes denominated deeds of trust, why is that clause there? That creates ambiguity. If the legislature indeed – I'm sorry, where is this clause? I'm back at Section 321. It says does not invalidate or preclude the use in the state of instruments, sometimes denominated deeds of trust, trust deeds, or trust indentures. That clause is what changes this case, that clause. Okay. Because if it was gone, then it would clearly say deeds of trust should not be invalidated. But why did they put that in there? It's a funneling language. It narrows language to deal with they were trying to reach common law deeds of trust. And, you know, take up the exercise. Try to make this – try to improve legislature's drafting of singling out common law deeds of trust and trying to make those valid. You're down to less than two minutes. Okay. Did you want to save that? Yes. Yes, Your Honor, thank you. Okay. We'll hear from the other side. Good morning, Your Honors. I'm Kevin Jones from Missoula, Montana. I represent the appellee or one of the appellee's GMAC mortgage. This, to me, is a very straightforward case. It involves strictly the interpretation of a statute. The statute was enacted by the Montana legislature just one year after the Amsterdam lumber case and clearly was in response to that action. Ms. Brandon has argued – We don't have anything other than timing to tell us that. There's no legislative history or anything that says we are reacting – There was some legislative history that was submitted, I think, as part of Ms. Brandon's brief in the bankruptcy court. The bankruptcy court said it did not need to consider the legislative history because the first canon of judicial interpretation is to look at the statute and if the statute is clear – You made a statement about the purpose of the statute. Yes. Okay. And I asked you whether there was anything, and then you'll now go off and tell me about what the bankruptcy court said. I think if you do look – Just listen to the question and answer the question. You said this was done clearly, I think you would, clearly in response to this case. And so I asked you, I asked you, is there anything other than the fact it happened a year later that suggests that? Is there anything that says that's what it responds to? Now, I don't want a history. I don't want to know what the other courts said or anything else. Just tell me and answer my question. There is, Your Honor. If you look at the legislative history notes that were submitted into the bankruptcy court, the discussion in both the Montana House and Senate specifically discusses the Amsterdam case and it's cited by name in the minute notes of the discussion for the passing of the bill. So, yes. What are the minute notes? I've never heard of this. The minute notes talk about, I think – What are minute notes? When the committee that's deciding whether to pass a bill on to be approved is meeting and voting on something, they take notes of their meeting. And where is this material? I believe it was submitted in Ms. Brandon's brief to the bankruptcy court. I don't believe I submitted anything in that regard. So it would be in the bankruptcy court docket material. It's not in the excerpts? I don't think it's been discussed or excerpted in either of the briefs filed here. Okay. But it's part of the bankruptcy court brief. But if we look there, we will find discussion that says they are trying to overrule the Amsterdam case. It doesn't say trying to overrule. It says that it's in response to the Amsterdam case, and it's mentioned specifically by case name two or three times in those notes. Okay. Thank you. Okay. Ms. Brandon has argued that this new statute that was enacted after Amsterdam was only intended to apply to common law deeds of trust, but nowhere in the statute does it say common law deeds of trust. And the legislature clearly could have limited its application to just common law deeds of trust had it intended to do so. Instead, it used deeds of trust, trust indentures, or trust deeds in the language. So I don't think there's any evidence that the legislature intended to limit it to constructive or to common law deeds of trust, and that's not anywhere in the statute. Okay. Thank you. You have a couple of minutes to rebuttal. Your Honor, Judge Kaczynski, to answer your concern concerning on the legislative history, it's in the appellate's appendix, and I'd like to call your attention to that language. It does more than just address the Amsterdam case. I'm sorry. Where is this appendix? The appellant's appendix. I heard what you said. I said, where is it? At page six. Is it attached to your brief? Appendix? You're talking about excerpts of record? What are you talking about? Not excerpts of record, but, yes, attached to my brief at the back is an appendix. Your blue brief? Yes. Okay. And at page six of the appendix. I don't see any appendix. Am I looking at the wrong case? Just in case I run out of time. Sorry. Yeah, go ahead. Just in case I run out of time, let me give you appendix pages six, nine, and 12, which are parts of the legislative history. In there, the legislature, on their first draft of the act, this is what it said, a bill for an act titled an act affirming validity of deeds of trust. Again, we're going back to a common law deed of trust. Common law deeds of trust in Montana are important because they allow for three parties to end transaction instead of the two under traditional mortgages. They also allow for non-judicial foreclosure, which is not allowed in mortgages, those required judicial foreclosures. They also, and in these legislative history notes that I've just paged for you, six, nine, and 12, it shows that common law deeds of trust were designed for larger tract financing, sophisticated parties where maybe there'd be more than one lender involved. Going back to page six of the appendix, though, it says a bill for an act titled an act affirming the validity of deeds of trust not intended to constitute trust indentures under the Small Tract Financing Act. When you read the other language on those. That's not what the act finally said. Ah, but you can interpret that final act two different ways. You can construe it narrowly. I can't interpret. Ah, the rules of construction, though. They say that you're to construe statutes in favor of a common scheme and in favor of public policy. Again, we need to weight that balance on mortgage laws towards construing the Small Tract Financing Act narrowly. What happens if we don't? You get the case that Mr. Jones has submitted to U.S. Supplemental Authority. That was 248 acres that a trust indenture was used on. What happens if they go to sale? And they had. They had filed a notice of intent to sell. Your Honors, thank you for your time. Thank you. Case decided. We'll stand for a minute.
judges: Kozinski, Rawlinson, Bea